UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JASON HEUBERGER, individually,
and on behalf of others similarly situated,

      Plaintiff,

      v.

HARRY L. SMITH d/b/a/ "MY-TRE
GLAMMA MANAGEMENT,"
DESTINY MGT, INC., and DIAMOND
PROPOERTIES MGMT, INC.,

      Defendants.

)
)
)
)
)  Case No. 3:16-CV-386-JD-JEM
)
)
)
)
)

**MEMORANDUM OPINION AND ORDER**

This is an action brought under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §
201 *et seq.*, and the Indiana Minimum Wage Law (the "IMWL"), Ind. Code § 22-2-2-1 *et seq.*,
by Plaintiff Jason Heuberger ("Plaintiff") against his employer, Mr. Harry Smith d/b/a My-Tre
Glamma Management ("Glamma"), and two other companies, Destiny MGT, Inc. ("Destiny")
and Diamond Properties MGMT, Inc. ("Diamond"). [DE 1] Mr. Smith is the president of both
Destiny and Diamond. [DE 24-1 ¶ 8] Between them, Defendants own and operate a total of
nineteen McDonald's restaurants in Indiana. [DE 18-3]

Plaintiff alleges that Defendants violated the FLSA (Count I) and the IMWL (Count II)
by failing to pay him and similarly situated employees for their attendance at and participation in
a mandatory orientation session. [DE 1 ¶¶ 1, 15, 31-50] Plaintiff further alleges that Defendants
violated the FLSA (Count III) and the IMWL (Count IV) by deducting a "crew uniform clothing
fee" of $2.00 from his and similarly situated employees' paychecks, which reduced the
employees' wages to below the minimum wage level. [DE 1 ¶¶ 2, 21, 23, 51-73]

1

Pending before the Court are two motions, filed only two days apart from one another:
Defendants' Partial Motion to Dismiss Plaintiff's Complaint (the "MTD") [DE 15]; and
Plaintiff's Motion for Conditional Collective Action Certification Pursuant to 29 U.S.C. § 216(b)
(the "§ 216(b) Motion"). [DE 18] Specifically, Defendants move to dismiss Counts II, III, and IV
of Plaintiff's complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6). [DE 15] Destiny and Diamond
further move to dismiss the complaint in its entirety as it relates to them, pursuant to Fed. R. Civ.
P. Rule 12(b)(1) for lack of standing. At the same time, Plaintiff requests that this Court certify
subclasses of employees who participated in the alleged unpaid mandatory orientation, and
whose wages were reduced by the crew uniform deductions.

At the outset, Plaintiff admits that his state law claims under Counts II and IV are moot.
[DE 25 at 1 n. 1] Therefore, the Court will dismiss those claims with prejudice and confine its
analysis below to the remaining issues.[1]

---

[1]   The Court notes that it would have dismissed Counts II and IV regardless of Plaintiff's concession.
Claims for minimum wage and overtime compensation cannot be raised under both the IMWL and the
FLSA because the FLSA is the exclusive remedy for enforcing rights created under that federal statute.
*See Parker v. Schilli Transp.*, 686 N.E.2d 845, 851 (Ind. Ct. App. 1997), *trans. denied* (addressing
overtime compensation claims). The IMWL states, in pertinent part, that the term "employer … shall not
include any employer who is subject to the minimum wage provisions of the federal Fair Labor Standards
Act...." Ind. Code § 22-2-2-3. "Thus, as a general matter, the Indiana Minimum Wage Law does not apply
to employers subject to the FLSA." *Cox v. Gannett Company, Inc.*, 2016 WL 3165613, at *2 (S.D. Ind.
June 7, 2016).

Under the FLSA, an "employer" is defined broadly as "any person acting directly or indirectly in the
interest of the employer in relation to an employee." 29 U.S.C. § 203. Here, there is no question that
Glamma is an "employer" under the FLSA. Plaintiff, for one, alleges as much: "Defendants [including
Glamma] are collectively the joint employers of Plaintiff … *under the FLSA's broad definitions of
'employer.'*" [DE 1 ¶ 11] (emphasis added). He also incorporates this allegation in his state law claims.
[DE 1 ¶¶ 41, 64] *See Shivers v. Miller Beach Terrace, Inc.*, No. 2:11-cv-204, 2012 U.S. Dist. LEXIS
55804, at *2 (N.D. Ind. Apr. 18, 2012) (dismissing IMWL claim brought alongside FLSA claim where
plaintiff alleged employer was subject to the FLSA and incorporated that allegation into state law claim).
Moreover, Defendants admit that they are "employers" under the FLSA in their MTD. [DE 16 at 10]

## FACTUAL BACKGROUND

Defendants Glamma, Destiny, and Diamond, own and operate a total of nineteen McDonald's franchise restaurants in Indiana. [DE 1 ¶ 1; DE 18-3; DE 24-1] Mr. Harry Smith owns and operates ten of these restaurants under the business name "My-Tre Glamma Management." [DE 24-1 ¶ 3] Six of Glamma's restaurants are located in Elkhart, Indiana, while the remaining four are located in Middlebury, Goshen, and Wakarusa, Indiana. *Id.* Mr. Smith is also the president of both Destiny and Diamond. *Id.* ¶ 8. Destiny owns and operates one of the remaining nine restaurants, and Diamond owns and operates the other eight. [DE 18-3; DE 24-1 ¶¶ 6-7] None of the restaurants owned and operated by either Destiny or Diamond are located in Elkhart. *Id.* Plaintiff alleges that Defendants, together, form a "single employer" or "single integrated enterprise" and that they are "joint employers" because they jointly operate this chain of restaurants, and maintain interrelated operations, centralized control of labor, common management, common ownership, and common financial control. [DE 1 ¶ 11]

In or about February 2016, Plaintiff was hired to work at one of these McDonald's restaurants, located at 130 N. Main Street, Elkhart, Indiana. [DE 1 ¶ 12; DE 24-1 ¶ 2] This restaurant is owned and operated by Glamma. [DE 18-3] Around the time of his hire, Plaintiff was required to participate in an unpaid orientation session at one of the six Glamma-owned McDonald's restaurants in Elkhart.[2] [DE 18-1 ¶ 4; DE 24-1, Exh. A] Plaintiff alleges that Defendants required their other hourly-paid employees to undergo this same unpaid orientation as a condition of employment. [DE 1 ¶ 14] Plaintiff's orientation generally consisted of filling out paperwork and going over his employer's policies. [DE 18-1 ¶ 6] At all times relevant,

---

[2]   Defendants note a potential discrepancy as to where Plaintiff participated in this orientation – either at the 130 N. Main Street location or at 3429 S. Main Street, Elkhart, Indiana. [DE 24-7] But either way, Plaintiff's orientation occurred at one of the six Elkhart McDonald's owned and operated by Glamma. [DE 18-3]

Plaintiff alleges that Defendants paid him and other employees the exact federal minimum wage of $7.25 per hour. [DE 1 ¶ 19]

On or about May 1, 2016, the manager of the 130 N. Main Street restaurant, Amy Powers [DE 18-3], gave Plaintiff and other employees a memorandum, which stated that starting that same day, a $2.00 crew uniform clothing fee would be deducted from every paycheck. [DE 1 ¶ 20; DE 18-1 ¶ 8, Exh. B] That memorandum was entitled, "MY-TRE GLAMMA MANAGEMENT UNIFORM CONTRACT." [DE 1 ¶ 20; DE 18-1, Exh. B] Plaintiff claims that, because he is paid at precisely the federal minimum wage, these deductions have caused his net wages to fall below the minimum wage. [DE 1 ¶ 21; DE 18-1 ¶ 9] Plaintiff further alleges that "[a]ll of Defendants' other hourly-paid minimum wage employees had similar experiences to those of Plaintiff" because "[t]hey are subject to the same 'crew uniform clothing fee.'" [DE 1 ¶ 23] Plaintiff's own paychecks, however, indicate that no such deductions were ever taken from his wages. [DE 16-1; DE 24-1, Exh. E]

Plaintiff brings this case as an "opt-in" collective action, and makes the following collective allegations regarding himself and all of Defendants' other hourly-paid employees: they have worked as hourly-paid employees for Defendants; they have been required to undergo two hours of mandatory "orientation" training for Defendants as a condition of their employment; they have not been paid for that orientation; they are and/or were paid the minimum wage; and they have been subjected to the same "crew uniform clothing fee," which decreases their net pay below minimum wage. [DE 1 ¶¶ 28, 30]

It is against the backdrop of these facts that the Court conducts its analysis.

4

## DISCUSSION

### I.   Plaintiff's § 216(b) Motion

Plaintiff is essentially asking the Court to certify two subclasses of employees who worked at Defendants' restaurants. The first subclass relates to Plaintiff's allegations that Defendants failed to pay new employees for attending the mandatory orientation session (the "orientation subclass"). For these claims, Plaintiff proposes that "all current and former hourly-paid workers who worked at Defendants' McDonald's restaurants within the prior three years" be certified together. [DE 18 at 1] Second, with regard to his claims that Defendants paid their employees less than the minimum wage by deducting wages as part of a crew uniform fee, Plaintiff requests certification of "all current and former hourly-paid workers who worked at Defendants' McDonald's restaurants for the exact … minimum wage rate … at any time since May 1, 2016" (the "uniform deduction subclass"). *Id*.

### a.   Collective Actions and the FLSA

The FLSA requires employers to pay wages of at least $7.25 per hour to each of their employees. 29 U.S.C. § 206(a)(1)(C). Under 29 U.S.C. § 216(b), an employee may bring an action to recover unpaid minimum wages on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b).  This is known as a "collective action."  *Harkins v. Riverboat Services, Inc*., 385 F.3d 1099, 1101 (7th Cir. 2004).  However, no current or former aggrieved employee may be a party plaintiff to a collective action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Collective actions brought under the FLSA are fundamentally different than class actions under Fed. R. Civ. P. Rule 23. *See Biddings v. Lake County*, No. 2:09-cv-38, 2009 WL 2175584,

at *2 (N.D. Ind. July 15, 2009).  Plaintiffs in a collective action must "opt-in" to the action to be

bound by a judgment while plaintiffs in a Rule 23 class action must "opt-out." *See id.* (citing

*King v. Gen. Elec. Co.*, 960 F.2d 617, 621 (7th Cir. 1992); *Woods v. New York Life Ins. Co.*, 686

F.2d 578, 580 (7th Cir. 1982)).  Because of the "opt-in" requirement, a representative plaintiff in

a collective action must be able to inform other individuals who may have similar claims that

they may join his lawsuit. *See Biddings*, 2009 WL 2175584, at *2 (citing *Austin v. CUNA Mut.*

*Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006)).

Section 216(b) does not explicitly provide for court-ordered notice. 29 U.S.C. § 216(b).

However, in appropriate cases, district courts have the discretion to implement § 216(b) by

facilitating notice to potential plaintiffs. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165,

169-70, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).  In fact, "trial court involvement in the notice

process is inevitable in cases with numerous plaintiffs where written consent is required by

statute, [and therefore] it lies within the discretion of the court to begin its involvement early, at

the point of the initial notice, rather than at some later time." *Id*. at 171.  Such court-authorized

notice serves the broad, remedial purpose of the FLSA and is in line with the court's interest in

managing its docket, so long as the court takes care to avoid the appearance of judicial

endorsement of the merits of the action. *Id*. at 172-74.

Not only is the FLSA without instructions as to when courts should exercise their

discretion and authorize notice to potential plaintiffs, it also does not define the term "similarly

situated." *Biddings*, 2009 WL 2175584, at *2. "In this circuit, district courts generally follow a

two-step inquiry when certifying collective actions. In the first step, the Court must determine

whether to conditionally certify an action as a collective action." *Williams v. Angie's List, Inc*.,

No. 1:16-cv-878, 2017 WL 1546319, at *2 (S.D. Ind. Apr. 27, 2017). "The sole consequence of

conditional certification is the sending of court-approved written notice to employees, who in

turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 133 S. Ct. 1523, 1530, 185 L. Ed. 2d 636 (2013) (internal citations omitted).

At the first step, the Court considers "whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin*, 232 F.R.D. at 605. The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs. District courts in this circuit typically apply the following analysis: to be similarly situated at the first step, the plaintiff needs to make only a modest factual showing that he and the potential plaintiffs were victims of a common policy or plan that violated the law. *See, e.g., Bradley v. Arc of N.W. Ind., Inc*., No. 2:14-cv-204, 2015 WL 2189284, at *2 (N.D. Ind. May 11, 2015) (citing *Allen v. The Payday Loan Store of Ind., Inc*., No. 2:13-cv-262, 2013 WL 6237852, at *1 (N.D. Ind. Dec. 3, 2013)); *see also Camilotes v. Resurrection Health Care Corp*., 286 F.R.D. 339, 345 (N.D. Ill. 2012). The Court analyzes the pleadings and any affidavits to determine whether that modest showing is made. *Knox v. Jones Group*, 208 F. Supp. 3d 954, 958 (S.D. Ind. 2016).

If the Court conditionally certifies a collective action and authorizes notice to potential participants, it proceeds to the second step in the certification process at the close of discovery and after the opt-in process is completed. *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008); *Austin*, 232 F.R.D. at 605. At that stage, the defendant can move to dismiss the "opt-in" plaintiffs in light of the record developed during discovery. *Biddings*, 2009 WL 2175584, at *3.

### i. Plaintiff is not "similarly situated" to the proposed uniform deduction subclass.

The Court will address and dispense with the second of Plaintiff's proposed subclasses first. Plaintiff offers only two pieces of evidence in support of his request that the Court certify the proposed uniform deduction subclass. First, Plaintiff submits the memorandum given to him and other employees by his manager on or about May 1, 2016, which states that, starting that same day, "a $2.00 crew uniform clothing fee … will be deducted every paycheck." [DE 18-1 ¶ 8, Exh. B]. Second, Plaintiff attests that "the deductions for 'crew uniform clothing fees' *have caused* [his] net wages to fall below the federal and Indiana minimum wage." [DE 18-1 ¶ 9] (emphasis added). The effect of Plaintiff's second statement, in particular, is to claim that those deductions were in fact taken out of his paychecks. Plaintiff makes this statement without attaching any of his paychecks.

Plaintiff's paychecks, however, attached to Defendants' opposition to the § 216(b) Motion, paint a different picture. [DE 24-1, Exh. E] These paychecks cover consecutive pay periods from February 14, 2016, Plaintiff's first pay period [DE 18-1 ¶ 2], through the middle of September 2016.[3] [DE 24-1, Exh. E] As indicated by these paychecks, no deductions – let alone a "crew uniform clothing fee" – were ever subtracted from Plaintiff's wages. *Id*. Plaintiff was paid at the minimum wage rate of $7.25 per hour during each of these twelve pay periods, and additionally earned overtime pay at the rate of $10.875 per hour during four of them. *Id*.

Although a more lenient standard applies at this early stage, "when presented with evidence which contradicts [Plaintiff's] claim" that Defendants had a practice and policy that

---

[3]  The attached paychecks cover the entirety of Plaintiff's employment with Glamma up to the filing of Defendants' opposition to the § 216(b) Motion. The pay period for the most recent paycheck ended on September 10, 2016, with a paydate of September 19, 2016. [DE 24-1, Exh. E] Plaintiff's next pay period presumably ran from September 11, 2016, until September 24, 2016, with a paydate approximately nine days thereafter. Defendants filed their opposition on September 26, 2016. [DE 24]

violated the FLSA by deducting uniform fees, the Court "'will not stick its head in the sand and ignore that evidence.'" *Williams*, 2017 WL 1546319, at *3 (quoting *Hawkins v. Alorica*, 287 F.R.D. 431, 441 (S.D. Ind. 2012)). It would be a waste of the Court's and the litigants' time to notify a class "only to later determine that the matter should not proceed as a class action because the class members are not similarly situated." *Id*. Here, the authenticated paychecks clearly demonstrate that Plaintiff is not a member of the class which he wishes to represent; he and the potential plaintiffs are not "similarly situated" because no crew uniform deductions were actually taken from his paychecks. [DE 24-1 ¶ 22, Exh. E] Thus, he has not made a "modest factual showing that he and the other employees to whom notice is to be sent were victims of a common policy or plan that violated the law," *Allen*, 2013 WL 6237852, at *1, and the Court will deny his request to certify the uniform deduction subclass. *See Weil v. Metal Techs., Inc.*, No. 2:15-cv-16, 2016 U.S. Dist. LEXIS 8100, at *27 (S.D. Ind. Jan. 25, 2016) (denying collective action certification for employees who had unpaid lunch breaks of twenty minutes or less where time records showed that named plaintiffs never took a lunch break of twenty minutes or less and therefore they were not harmed by the policy at issue); *Strait v. Belcan Eng'g Grp., Inc.*, 911 F. Supp. 2d 709, 731 (N.D. Ill. 2012) (denying collective action certification where named plaintiffs failed to identify any negative vacation recouped from their pay, any instances of forced leave without pay as to them, or improper furlough adjustments to their pay despite basing arguments for collective action on these theories).

### ii.  The proposed orientation subclass is overbroad.

The Court turns next to Plaintiff's proposed orientation subclass, and finds that it, as drafted, is overly broad. A proposed FLSA collective class can be overly broad. *See e.g.*, *Moss v. Putnam Cnty. Hosp.*, No. 2:10-cv-28, 2010 WL 2985301, at *2 (S.D. Ind. July 21, 2010)

(limiting the proposed collective class to include only those plaintiffs compensated under the relevant overtime policy). Yet it is important to keep in mind that certification of a collective class is less demanding than certification of a class action under Rule 23, and does not require, "that the named representative's claims have the same essential characteristics as a class at large to achieve the initial certification." *Swarthout v. Ryla Teleservices, Inc.*, No. 4:11-cv-21, 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011) (citing *Brickel v. Bradford-Scott Data Corp.*, No. 1:09-cv-58, 2010 WL 145348, at *1 (N.D. Ind. Jan. 11, 2010)). Plaintiff need only provide the minimal showing that some identifiable factual or legal nexus binds the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA in order to justify notice at this stage of the proceedings. *See Boyd v. Jupiter Aluminum Corp.*, No. 2:05-cv-227, 2006 WL 1518987, at * 5 (N.D. Ind. May 31, 2006). Despite this lenient standard, Plaintiff has failed to make a minimal showing of a nexus that "binds together" employees of Glamma with those of Destiny and Diamond.

To support his argument for certifying the orientation subclass, Plaintiff only offers his own affidavit and the orientation checklist provided to him by his employer. [DE 18-1, Exh. A] In or about February 2016, Plaintiff was hired to work at a McDonald's restaurant located at 130 N. Main Street in Elkhart, Indiana. [DE 18-1 ¶ 2] That restaurant is owned and operated by Glamma; it is not owned or operated by either Destiny or Diamond. [DE 18-3] Plaintiff does not allege that he ever worked at any of the locations operated by Destiny or Diamond. Around the time of his hire, Amy Powers, general manager of the 130 N. Main Street restaurant, presented Plaintiff with an orientation checklist and informed Plaintiff that he had to complete the orientation program, which consisted of filling out paperwork and going over his employer's policies. [DE 18-1 ¶¶ 4-6; 18-3] Plaintiff maintains he was not paid for this two-hour orientation.

10

*Id*. ¶ 6. The orientation was conducted at another Glamma location, 3429 S. Main Street, Elkhart, Indiana.[4] [DE 18-3; 24-1]

Plaintiff argues broadly that his motion is supported by "*Defendants'* own form documents," which facially reflect a policy "not to pay for training [of] *their* employees." [DE 18 at 10] (emphasis added). However, Plaintiff offers no evidence to support his assertion that all three defendants implemented this policy. Indeed, Plaintiff's own affidavit states, "*I* was required to participate" in unpaid training, and that Amy Powers "told *me* that *I* had to complete 'Orientation.'" [DE 18-1 ¶ 4] (emphasis added). Plaintiff makes no mention of whether any other employees, let alone those working at Destiny and Diamond locations, underwent the same orientation. Similarly, Plaintiff does not attest to whether other hourly-paid employees even received the orientation checklist, which undermines his argument that it is a corporate form document imposing a mandatory practice across the board to employees of all three Defendants: "Amy Powers, store manager, presented *me* with a memo regarding 'Orientation' …." [DE 18-1 ¶ 4] (emphasis added). The orientation checklist does not indicate that it applies to or is used by all three Defendants, and the only information it contains relating to any of the three Defendants is the location of the orientation itself – a Glamma-owned restaurant. [DE 18-1, Exh. A] Thus, this is not the situation in which corporate documents evidence a "company-wide" application of unlawful policies across all three Defendants, as Plaintiff argues. *Cf. Ravenell v. Avis Budget Car Rental, LLC*, No. 08-cv-2113, 2010 WL 2921508, at *4 (E.D.N.Y. July 19, 2010) (certifying collective action where documents used *nationwide* by collective defendants revealed that all shift managers, "*wherever located*, were treated as part of a category of similarly situated

---

[4]   The copies of the orientation checklist provided by Plaintiff cut off this location at the bottom of the page. [DE 1-2; 18-1, Exh. 3]

employees") (emphasis added). The Court will therefore amend the proposed orientation subclass to exclude employees of Destiny and Diamond.

### iii.   The evidence supports certification of a limited version of the proposed orientation subclass.

Though lenient, the "modest factual showing" standard is not a mere formality. *Biddings*, 2009 WL 2175584, at *3 (citing *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045-46 (N.D. Ill. 2003) (evidence of defendant's payment practice concerning two out of fifty employees, without more, did not provide modest factual showing that the employer had a common policy or plan to violate the FLSA). The requisite showing may be accomplished by providing an affidavit, declaration, or other support beyond mere allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy. *Id*. But, a plaintiff cannot rely on allegations alone to make the required "modest factual showing," unless the defendant admits that other similarly situated employees exist. *Id*. (citation omitted).

Here, even though Plaintiff does not attest as to whether any other employees at the Glamma McDonald's were required to attend orientation, Mr. Smith, d/b/a Glamma and president of Destiny and Diamond, clarifies the scope of this practice. Mr. Smith's affidavit explains that "individuals seeking employment at one of the six My-Tre Glamma McDonald's located in Elkhart, Indiana are asked to attend a pre-hire 'orientation' at … 3429 South Main Street…." [DE 24-1 ¶ 9] Only those applicants seeking employment at these six locations are given the orientation checklist and are required to attend this orientation. *Id*. ¶¶ 10-11. Individuals applying for positions at any of the other restaurants owned and operated by

Defendants do not attend this orientation and are not provided the orientation checklist.[5]  *Id.* ¶ 15.

Mr. Smith's admissions provide enough evidence at this stage to support a finding that Plaintiff and similarly situated hourly-paid workers at the six Glamma McDonald's in Elkhart, Indiana, were subject to a common policy or plan that allegedly violates the FLSA – or more specifically, that those Glamma employees were not paid for participating in the mandatory orientation. Accordingly, given that Plaintiff's proposed collective action concerns similarly situated individuals and common issues of fact and law, and given the Court's interest in judicial efficiency and avoiding inconsistent results in related matters, the Court finds that a factual showing sufficient to satisfy step one has been met by Plaintiff as to this limited subclass. Consistent with the evidence, the Court will certify a subclass that includes only those hourly-paid workers at the six Glamma restaurants located in Elkhart, Indiana.[6]

### b.  Proposed Collective Action Notice and Consent Form

Once a collective action is conditionally approved, "the court has managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche*, 493 U.S. at 170-71.

---

[5]   These restaurants include the four Glamma restaurants not located in Elkhart, the one restaurant owned and operated by Destiny, and the eight restaurants owned and operated by Diamond. [DE 24-1 ¶¶ 3, 6-7]

[6]   In light of the Court's ruling on Defendants' MTD, especially with regard to the standing issues surrounding Destiny and Diamond, the Court notes that Plaintiff may later seek to modify the conditionally certified class should the progression of the case permit. *See Myers v. Hertz Corp.*, 624 F.3d 537, 557 (2d Cir. 2010) (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1241-43 (11th Cir. 2008) (noting that district court denied two motions to facilitate nationwide notice to potential plaintiffs prior to certifying a FLSA collective action on plaintiffs' third motion); *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) ("District courts have ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial.")).

In examining and approving any proposed notice, the Court must be careful to avoid the appearance of "judicial sponsorship" or a "judicial imprimatur." *Id.* at 174; *Biddings*, 2009 WL 2175584, at *4; *see also Woods v. N.Y. Life Ins. Co*., 686 F.2d 578, 581 (7th Cir. 1982). Because of this, the Court will order that the case caption be removed from the notice and that the notice instead be placed on Plaintiff's attorneys' letterhead. *See Alexander v. Caraustar Indus.*, No. 11-c-1007, 2011 U.S. Dist. LEXIS 68865, at *8 (N.D. Ill. June 27, 2011) (ordering same). However, Plaintiff may still include the case number and title on the notice. *Id.*

Plaintiff here requests that the Court order notice of this collective action be sent to all members of the approved class, as now revised, and that the opt-in period run 90 days from the mailing of the notice. [DE 18 at 14-15] Plaintiff further requests that the notice be posted in the break rooms at all of Defendants' restaurants, *id.*, although now this proposal is limited to posting the notices in all six Elkhart McDonald's locations owned and operated by Glamma. Presumably to identify and contact members of the relevant class, Plaintiff wishes to compel production of their names, addresses, dates of employment, and social security numbers. The Court will limit Plaintiff's requests as follows:

Defendants argue that plaintiff's request to require posting of the notice in the restaurants' breakrooms is not only unnecessary, as the notices will already be mailed to a group of individuals that *includes* current employees, but also risks miscommunicating to their employees that they endorse the lawsuit.  [DE 24 at 22-23] Other than describing this practice as "routine," [DE 18 at 14], Plaintiff offers no reason why posting is necessary, and accordingly his request that the Court order Defendants to post notice will be denied.  *See Alexander*, 2011 U.S. Dist. LEXIS 68865, at **8-9; *see also Howard v. Securitas Sec. Servs.*, No. 08-c-2746, 2009 WL 140126, at *9 (declining to order the defendant to post notice "absent evidence that the mailing of notices is ineffective"); *cf. Gomez v. H & R Gunlund Ranches, Inc*., No. CV F 10-1163, 2010

WL 5232973, at *11-12 (E.D. Cal. Dec. 16, 2010) (authorizing posting of notices where potential class members were migrant workers who may be difficult to reach by direct mail).

The opt-in period will run 60 days from the mailing of Plaintiff's notice, rather than 90 days as requested by Plaintiff. This is not a case that presents a nationwide class of patients necessitating a longer opt-in period. Rather, the class here is limited only to those employees of six McDonald's restaurants, all of which are located in Elkhart, Indiana. "The length of the opt-in period is within the Court's discretion." *Campbell v. Advantage Sales & Mktg., LLC*, No. 1:09-cv-01430, 2010 WL 4386793, at *4 (S.D. Ind. Oct. 28, 2010) (citing *Hoffmann-La Roche*, 493 U.S. at 170). Unlike in *Campbell*, however, where the plaintiffs claimed to have a class of over 5,000 potential plaintiffs, Plaintiffs here offer no reason for their 90-day proposal other than that 90 days is the "standard" operating procedure for district courts. [DE 25 at 8] But courts have approved opt-in periods ranging from 30 days to 120 days. *See Campbell*, 2010 WL 4386793, at *4 (comparing cases). Given that a relatively small class will likely be noticed here, the Court concludes that a 60-day opt-in period is appropriate. *See Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 765 (N.D. Ill. 2011) (concluding 60-day period was reasonable given "relatively small number of potential class members"); *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 753 (N.D. Ill. 2010) (noting 60-day opt-in period "provide[d] ample opportunity for prospective class members to opt-in"); *Shiner v. Select Comfort Corp.*, No. 09-c-2630, 2009 WL 4884166, at *5 (allowing for 60-day opt-in period); *Brand v. Comcast Corp.*, No. 12-cv-1122, 2012 WL 4482124, at *9 (N.D. Ill. Sept. 26, 2012) (same). The Court also suggests that the parties confer and identify a cutoff date once the notices have been mailed in order to prevent confusion.

To facilitate this noticing, Glamma will provide the names, addresses, and dates of employment of potential plaintiffs within thirty (30) days of this order, based on the Court's

definition of the collective class. However, the Court will not compel production of social security numbers, which constitute highly sensitive and private information. *See Brand*, 2012 WL 4482124, at *9 (denying request for potential plaintiffs' social security numbers, citing individual privacy concerns); *Blakes v. Ill. Bell Tel. Co.*, No. 11-cv-336, 2011 WL 2446598, at *8 (N.D. Ill. June 15, 2015) (same). "[P]roviding sensitive personal data such as a social security number is not to be done lightly," *Blakes*, 2011 WL 2446598, at *8, and the Court sees no reason to compel production of potential plaintiffs' social security numbers. The Court further notes that Plaintiff did not respond to Defendants' arguments against providing this data in his reply brief in support of his § 216(b) Motion.  [DE 25]

The parties are directed to confer and draft a notice that complies with the contents of this order and to submit said draft to the Court for approval prior to the notice's issuance.

## II.   <u>Defendants' Partial Motion to Dismiss</u>

Although the Court denies certain aspects of Plaintiff's § 216(b) Motion, his leftover *individual* claims "remain unaffected as the suit reverts to an individual suit on his behalf." *Strait*, 911 F. Supp. 2d at 735 (citing *Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010)). Specifically, Plaintiff is left with his individual claims in Counts II, III, and IV against all Defendants, and his claim in Count I against Destiny and Diamond.

Defendants move to dismiss Counts II, III, and IV of Plaintiff's complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6). [DE 15] Destiny and Diamond further move to dismiss the complaint in its entirety as it relates to them, pursuant to Fed. R. Civ. P. Rule 12(b)(1) for lack of standing. *Id.* As discussed above, the Court will dismiss as concededly moot Counts II and IV against all Defendants. For the reasons stated below, the Court will further dismiss Count III of the complaint as to all Defendants for failure to state a claim upon which relief can be granted,

and will dismiss Count I of the complaint as levied against Destiny and Diamond due to Plaintiff's lack of standing.

### a.  Standards

Rule 12(b)(1) authorizes dismissal of claims over which the Court lacks subject matter jurisdiction. In analyzing a motion to dismiss, the Court must accept as true all well-pled factual allegations and must draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citations omitted). The burden of establishing proper federal subject matter jurisdiction rests on the party asserting it, which in this case is Mr. Heuberger.  *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is

"'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### b.   Plaintiff's Wages Were Not Reduced by any Crew Uniform Deductions

Similar to his request to certify the proposed uniform deduction subclass, Plaintiff's individual claim for unpaid minimum wages – based on the allegation that Defendants deducted $2.00 from each of his paychecks – fails. Defendants twice attach Plaintiff's current paychecks for each pay period he worked to their filings, and the documents demonstrate that *no* deductions – let alone any deductions for a crew uniform fee – were ever subtracted from Plaintiff's wages. [DE 16-1; DE 24-1, Exh. E] Plaintiff earned a wage of $7.25 per hour during each of the pay periods from February 2016 through August 2016, and additionally earned overtime pay at the rate of $10.875 per hour during several of them. [DE 16-1] Plaintiff also received a raise in August 2016 – during the pendency of this lawsuit – to $8.00 per hour. [DE 24-1, Exh. E]

The parties hotly dispute whether the Court may consider these documents that lie outside the boundaries of the complaint. The Court can and will take these paychecks into account in reaching its determination as to Count III. It is well settled that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim, and that the Court may consider those documents in analyzing the motion to dismiss without converting it into one for summary judgment. *188 LLC v. Trinity Industries, Inc*., 300 F.3d 730, 735 (7th Cir. 2002). The policy of this exception that allows the Court to consider documents outside the four corners of the complaint, is to "prevent a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach a [document] that proves his claim has no merit." *Sa'Buttar Health & Med., P.C. v. Tap Pharm., Inc*., No. 03-

c-4074, 2004 WL 1510023, at *3 (N.D. Ill. July 2, 2004) (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). The case at bar presents the very scenario contemplated by this policy. Here, contrary to Plaintiff's claim in his opposition to the MTD [DE 20 at 12], the paychecks are explicitly referenced in the complaint and are central to his claim that deductions have been taken from his wages as part of a crew uniform fee. [DE 1 ¶¶ 2, 8] ("Since May 1, 2016 Defendants also have been deducting $2.00 from *each of their minimum wage employee's paychecks* to pay for each employee's uniform items …;" "Plaintiff's *paychecks* from his employment, *referenced herein*….") (emphasis added).

Plaintiff also argues in opposition that, because the paychecks have not been authenticated, the Court should not consider them.[7]  [DE 20 at 12-13] The cases cited by Plaintiff trace the "concededly authentic" language in *Tierney*, 304 F.3d at 738. *See United States v. Miller*, 2015 U.S. Dist. LEXIS 21088, at *3 (N.D. Ind. Feb. 23, 2015) (cited by Plaintiff and citing *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012)) (cited by Plaintiff and citing *Hecker v. Deere & Co*., 556 F.3d 575, 582 (7th Cir. 2009))). According to these cases, this language, originally included as dicta in *Tierney*, has subsequently morphed into a requirement that courts can only consider documents outside the pleadings on a Rule 12(b)(6) motion if those items are "concededly authentic." The purpose of the "concededly authentic" requirement is "to prevent consideration on a motion to dismiss of a document that 'require[s] discovery to authenticate or disambiguate.'" *Archer v. Chisolm*, 188 F. Supp. 3d 866, 879 n. 10 (E.D. Wisc. 2016) (citing Tierney, 556 F.3d at 739).

---

[7]   The set of paychecks attached to Defendants' opposition to the § 216(b) Motion were authenticated by Mr. Smith. [DE 24-1 ¶ 22] But, as explained herein, the Court does not need his authentication in order to consider the set of paychecks attached to Defendants' MTD.

That said, however, there is a distinction between documents that are "unauthenticated" and "inauthentic" that should not be overlooked. In *Hecker*, for example, the court approved the district court's consideration of documents outside the complaint on defendant's Rule 12(b)(6) motion that were "concededly authentic" along the lines of *Tierney*. 556 F.3d at 582. In doing so, the *Hecker* court rejected plaintiffs' analogy to *Travel Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423 (7th Cir. 1996), because in that case, plaintiffs actually contested the authenticity of the document that defendants wanted to use, whereas in *Hecker*, they did not. 556 F.3d at 582. Thus, the documents in Hecker were "concededly authentic."

Here, Plaintiff does not contest the authenticity of the paychecks and gives the Court no good reason to question their authenticity. Plaintiff only argues that they "have not been authenticated." [DE 20 at 12] Therefore, the Court will consider the paychecks attached to Defendants' MTD. *See ABN AMRO, Inc. v. Capital Int'l, Ltd*., No. 04-c-3123, 2007 WL 845046, at *11 (N.D. Ill. Mar. 16, 2007) (considering documents central to plaintiff's claims where plaintiff argued that documents were unauthenticated but did not assert that they were inauthentic); *Sa'Buttar*, 2004 WL 1510023, at *3 (considering contract attached to motion to dismiss and dismissing breach of contract claim where nonmovant claimed the contract was unauthenticated but did not argue the document was inauthentic). Because the paychecks demonstrate that no deductions were taken from Plaintiff's minimum wages for crew uniform fees or otherwise, Plaintiff has failed to sufficiently state a plausible claim for unpaid minimum wages under this theory. *Iqbal*, 556 U.S. at 678. Count III is therefore dismissed with prejudice as to all Defendants.

### c.   Plaintiff Lacks Standing as to Destiny and Diamond

20

Defendants argue that Plaintiff lacks standing to bring his individual claims against Destiny and Diamond.[8] [DE 16] In response, Plaintiff contends that he has adequately alleged that Defendants together form a "single employer" or "single integrated enterprise" and that they are "joint employers" such that he has standing to sue all three entities. [DE 20] For the reasons stated herein, the Court finds that Plaintiff lacks standing to bring his individual claims against either Destiny or Diamond.

In every case, the plaintiff has the burden of establishing the three elements of standing: that "(1) [he or she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). To meet this burden and to survive a challenge to standing under Rule 12(b)(1), a plaintiff must plead sufficient factual allegations, taken as true, that "plausibly suggest" each of these elements. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). "[T]o bring a valid case, a plaintiff must allege that a defendant—the very defendant sued—has somehow wronged her in a legally cognizable way." *Payton v. Cnty. of Kane*, 308 F.3d 673, 678 (7th Cir. 2002).

Under the FLSA, alleged employees' "injuries are only traceable to, and redressable by, those who employed them." *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016) (quoting *Roman v. Guapos III, Inc*., 970 F.Supp.2d 407, 412 (D. Md. 2013)). The

---

[8]   Destiny and Diamond moved to dismiss all Counts against them for lack of standing, but because Counts II, III, and IV will be dismissed with prejudice, the only relevant Count remaining for this standing argument is Count I.

FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An "employee," in turn, is defined as "any individual employed by an employer," *id.* § 203(e)(1), and "employ" means "to suffer or permit to work." *Id.* § 203(g). Consistent with these broad definitions, "[t]he Supreme Court has instructed courts to construe the terms 'employer' and 'employee' expansively under the FLSA." *Vanskike v. Peters*, 974 F.2d 806, 807 (7th Cir. 1992) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947)).

### i.   Plaintiff fails to allege that Destiny and Diamond are liable as "joint employers" of Glamma.

Plaintiff alleges that Defendants together are "joint employers" such that they may be sued together. [DE 1 ¶ 11] The FLSA premises liability on an employer-employee relationship. 29 U.S.C. § 206(a). But, "[t]here is no suggestion in the language of the [FLSA] that an employer is responsible to other employers' employees unless, of course, there is a joint employer relationship." *Villareal v. El Chile, Inc*., 776 F. Supp. 2d 778, 794 (N.D. Ill. 2011) (citing 29 C.F.R. § 791.2). "Two or more employers may jointly employ someone for the purpose of the FLSA." *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1207 (7th Cir. 1986); *see also* 29 C.F.R. § 791.2. For a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee. *See Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008) (*quoting Moreau v. Air France*, 343 F.3d 1179, 1182 (9th Cir. 2003)).[9]

---

[9]   While *Moldenhauer* involved review of an action under the Family Medical Leave Act (the "FMLA"), the court applied the FLSA standard for determining joint employer status, because the pertinent regulation in the FLSA mirrored that in the FMLA. 536 F.3d at 644.

Under the Department of Labor's regulations:

Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:

> (1) where there is an arrangement between the employers to share the employee's services, such as to interchange employees; or
>
> (2) where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b); *see also Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605, 608 (7th Cir. 2014).

In a joint employer scenario, multiple entities are considered to be the "joint employer" of an employee, even though that employee may have worked for only one of those entities. Take affiliated companies A, B, and C, for example. An employee may have only worked at company A, in which case A is the employee's employer for FLSA purposes. If certain circumstances exist, however, then B and C can also be considered employers of the employee under the FLSA, together with A. In that case, A, B, and C are the "joint employers" of the employee and may all be liable for alleged FLSA violations.

"Because status as an 'employee' for purposes of the FLSA depends on the totality of circumstances rather than on any technical label, courts must examine the 'economic reality' of the working relationship." *Vanskike*, 974 F.2d at 808 (citations omitted). To examine this "economic reality," courts look at several factors to determine whether multiple entities form a "joint employer" of an employee who worked for only one of those entities. To use the above

example, those factors include whether the putative employers, companies B and C: (1) had the

power to hire and fire A's employees; (2) supervised and controlled employee work schedules or

conditions of payments for A's employees; (3) determined the rate and method of payment for

A's employees; and (4) maintained employment records of A's employees. *See Moldenhauer*,

536 F.3d at 644 (applying the factors from *Bonnette v. California Health and Welfare Agency*,

704 F.2d 1465, 1470 (9th Cir. 1983), a FLSA case).[10]

    The Seventh Circuit has not yet addressed the factors a court should consider in

determining joint employment under the FLSA, so the Court will look to the test articulated by

the Ninth Circuit in *Bonnette* and applied by the Seventh Circuit in *Moldenhauer*, to guide its

analysis, in keeping with other district courts within this Circuit. *See Morgan v. SpeakEasy, LLC*,

625 F. Supp. 2d 632, 650 (N.D. Ill. 2007) (finding *Bonnette* appropriate to determine joint

employer status in the FLSA context).[11]

    Plaintiff does not allege that he ever worked for either Destiny or Diamond, or that he

worked at one of their locations. In fact, he does not allege that he ever worked at any

McDonald's location other than the one for which he was hired to work at. Plaintiff's own

allegations make clear that his employer was My-Tre Glamma Management, as evidenced by his

---

[10]   While expressed in the Court's example above, the four *Bonnette* factors are "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payment, (3) determined the rate and method of payment, and (4) maintained employment records." 704 F.2d at 1470.

[11]   On at least one occasion, the Seventh Circuit has declined to apply *Bonnette*, but only under case-specific circumstances. *See Vanskike*, 974 F.2d at 808-10 (declining to apply *Bonnette* in deciding whether a prisoner can plausibly be said to be "employed"). In *Vanskike*, the court explained that *Bonnette* might not be helpful "in the situation *presented*" because *Bonnette's* factors are "particularly appropriate where (as in *Bonnette* itself) it is clear that some entity is an 'employer' and the question is which one." *Id.* at 809 (emphasis added). *Bonnette* focuses on whether there is enough control over an individual to classify him as an employee, but in *Vanskike*, the court was faced with the opposite problem: whether *too much* control over an individual – in that case, an inmate – jeopardized the employer-employee relationship. *Id.* at 810. Thus, *Bonnette* is applicable here, where it is clear that Plaintiff is employed, but questions remain as to which Defendants actually employ him for FLSA purposes.

paychecks and the documents he received by his employer. [DE 1 ¶ 8; DE 1-2; DE 1-3; DE 16-1] Plaintiff's paychecks issued from Defendant "Harry Leonard Smith Jr My-Tre Glamma Management," not from Destiny or Diamond, or from any alleged parent company controlling all three Defendants. [DE 16-1] Furthermore, the very title of the crew uniform deduction memorandum Plaintiff received is "MY-TRE GLAMMA UNIFORM CONTRACT," [DE 1-3] and the orientation checklist indicates orientation took place at a Glamma-owned restaurant [DE 1-2; DE 24-1, Exh. A] Plaintiff admits he received these policies "at his place of employment." [DE 1 ¶ 8]

Plaintiff makes no specific allegations against Destiny or Diamond. Instead, he attempts to rope them in by repeatedly pleading in the collective, when his own allegations and documentation indicate that the policies and practices he seeks to challenge – mandatory unpaid orientation and the crew uniform deduction – were, at most, those of *his* employer, Glamma, not those of "Defendants." And as a result, Plaintiff lacks standing against Destiny and Diamond because he cannot allege that the three Defendants together maintained control over his hiring, supervision, or payment such that they might be considered a "joint employer" under *Bonnette* and *Moldenhauer*.

### ii.    Plaintiff's alternative "enterprise" theory is misplaced.

Plaintiff alternatively argues that Defendants are included in the FLSA's definition of "employer" because, together, they form a "single employer" or "single integrated enterprise," rendering them jointly liable for violations of the statute. [DE 1 ¶ 11; DE 20] The parties cannot agree on the applicable Seventh Circuit standard for evaluating this theory, and their discordance only amplifies the Court's discussion below regarding conflation of FLSA coverage and FLSA liability.

25

Plaintiff advocates for a four-factor test to determine whether separate entities constitute an integrated enterprise or single employer: "(1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." *Naperville Ready Mix v. NLRB*, 242 F.3d 744, 752 (7th Cir. 2001). Plaintiff cites to numerous cases in his opposition to the MTD to support his argument that he has "alleged facts sufficient to support a plausible claims for liability under either a 'single integrated enterprise' or 'single employer' theory." [DE 20 at 5] Unfortunately for Plaintiff, most of the cases he cites in support concern who is an "employer" for purposes of other employment laws, such as the National Labor Relations Act (the "NLRA"); the Labor-Management Relations Act (the "LMRA"), the Employee Retirement Income Security Act ("ERISA"), or the Family Medical Leave Act (the "FMLA").[12] None of these cases interpret the FLSA; indeed, *Naperville Ready Mix* itself is an NLRA case. As discussed above, the bottom line is that *FLSA* liability is predicated on an employee-employer relationship. Plaintiff must allege sufficient facts in his complaint that each of the other Defendants – Destiny and Diamond – qualify as his employer, either singularly or jointly with Glamma. He has failed to do so, and his allegations indicate that he only ever worked for Glamma.

Plaintiff does cite two cases that have applied the "single employer" or "single integrated enterprise" theory of liability in the FLSA context as a means of including employers who did

---

[12] *See Lippert Tile Co. v. Int'l. Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis.*, 724 F.3d 939 (7th Cir. 2013) (LMRA); *Moriarty v. Svec*, 164 F.3d 323 (7th Cir. 1998) (NLRA and ERISA); *Esmark, Inc. v. NLRB*, 887 F.2d 739 (7th Cir. 1989) (NLRA); *Kaufman v. CRST Lincoln Sales, Inc.*, 2001 U.S. Dist. LEXIS 79914 (N.D. Ind. Jun. 24, 2011) (FMLA and ERISA); *Trustee of Chi. Reg'l. Council of Carpenters Pension Fund v. Central Rug & Carpet Co.*, 2012 U.S. Dist. LEXIS 16889 (N.D. Ill. Feb. 10, 2012) (ERISA); *Chi. Reg'l. Council of Carpenters Pension Fund v. McGreal Constr., Inc.*, 2012 U.S. Dist. LEXIS 167373 (N.D. Ill. Nov. 26, 2012) (LMRA and ERISA); *Chi. Reg'l. Council of Carpenters Pension Fund v. FAC Constr. & Design, Inc.*, 2011 U.S. Dist. LEXIS 145411 (N.D. Ill. Dec. 15, 2011) (ERISA).

not employ the plaintiff. But these cases can be distinguished. In *Creech v. P.J. Wichita,* the plaintiff provided far more detail than here, alleging sufficient facts as to how various Papa John's pizza stores were centrally managed, and described the *shared* policies regarding pay of deliver drivers at *all locations*. No. 16-2312, 2016 U.S. Dist. LEXIS 122027, **7-9 (D. Kan. Sept. 8, 2016). And the factual scenario in *Sanchez* is wholly distinguishable. In *Sanchez*, plaintiffs filed suit against one corporate defendant and its individual owners, and then entered settlement talks with all defendants. No. 14-cv-04611, 2015 U.S. Dist. LEXIS 93782, *3 (N.D. Ill. July 20, 2015). Settlement talks fell through, and so defendants registered a new corporation to take over the other's business in a brazen effort to insulate the other's assets from the litigation, including using the same signs with the new name covering the old, employing the same individuals, and utilizing the same office equipment, labor management, and staff. *Id.* at **3-4. When plaintiffs amended the complaint to include this new company, defendants moved to dismiss and lost. *See id.* The *Sanchez* court saw through defendants' maneuver, and determined the two entities a "single employer" – indeed, they were more or less the exact same company, but for a name change. *Id.*

  *Creech* and *Sanchez* are not binding, but regardless, it is important to note that these cases did not apply established concepts of FLSA liability. Instead, they transferred concepts from the contexts of labor relations and employment discrimination to the FLSA's employer-employee relationship. *See Creech*, 2016 U.S. Dist. LEXIS 122027, *7 n. 15 (attributing four-factor standard to a discrimination case under the Americans with Disabilities Act); *Sanchez*, 2015 U.S. Dist. LEXIS 93782, *9 (citing an NLRA case for the "single employer" standard); *see*

*also Roman*, 970 F. Supp. 2d at 414-15 (distinguishing district court opinions cited by plaintiffs based on this same flaw).[13]

*Roman v. Guapos III, Inc.*, a FLSA decision from the United States District Court for the District of Maryland that has been repeatedly cited within the Seventh Circuit, is markedly similar to this case. In *Roman*, named busboys and waiters brought a collective FLSA action for unpaid minimum wage and overtime. *See generally*, 970 F. Supp. 2d 407. Plaintiffs sued five separately incorporated restaurants all owned by the same individual. *Id.* at 409-410. However, the three named plaintiffs were employed at only one of those five restaurants, and did not allege that they ever worked at any of the other locations. *Id.* Like here, plaintiffs claimed that the restaurants together formed a "single employer" or "single integrated enterprise," and cited a host of cases in support, all of which the court distinguished for the same reasons this Court has discussed immediately above. *Id.* at 414-15. The *Roman* court essentially rejected the notion that the "single employer" or "single integrated enterprise" theory of liability applies to FLSA cases, and instead reiterated that "every circuit has applied some variation of the *Bonnette* test, which correctly evaluates the relationship between employee and alleged employer, not between employer and non-employer." *Id.* at 415.

In dismissing the named plaintiffs' claims against the restaurants for which they did not work, the *Roman* court also discussed a similar case from the United States District Court for the District of Massachusetts, *Cavallaro v. UMass Memorial Health Care, Inc.*, 971 F. Supp. 2d 139 (D. Mass. 2013):

---

[13]   The Court is not persuaded by Defendants' arguments for applying the multifactor test from *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529 (7th Cir. 1987). In *Callahan v. City of Chicago*, the Seventh Circuit "rejected the application of *Lauritzen's* multifactor test when the alleged employee's suit didn't 'require a choice between employment and independent-contractor status.'" *Berger*, 843 F.3d at 291 n. 3 (quoting *Callahan v. City of Chicago*, 813 F.3d 658, 662 (7th Cir. 2016)). The instant matter does not involve the need to determine whether Plaintiff was an employee or an independent contractor.

Plaintiff was a registered nurse who worked at the UMass Memorial Medical Center ("UMass"). She brought an FLSA collective action on behalf of 13,000 similarly situated hourly employees against UMass, its subsidiary medical facilities, and individual corporate officers, which she alleged were "related organizations with common membership, governing bodies, trustees, officers, and benefit plans," that had a centralized payroll system, centralized website, and system-wide employee-benefit plans, all overseen by a single Board of Trustees. Cavallaro alleged that the multiple defendants failed to compensate plaintiff and the collective for hours worked. Cavallaro did not allege that hospitals other than UMass employed her, but alleged that they were part of a single, integrated enterprise, and thus constituted a "joint employer" who is liable under the FLSA.

The court found that plaintiff lacked standing because she failed to satisfy the traceability and redressability requirements. The court applied the *Bonnette* factors to determine whether the other hospitals were her "employer." The court found that plaintiff's complaint provided no basis for finding that an employer-employee relationship existed and therefore plaintiff lacked standing to assert claims against all the corporate defendants except UMass, her actual employer.

Similar to *Cavallaro,* Plaintiffs allege that a multi-entity enterprise is operating as a cohesive unit whose policies have violated the FLSA. But the Plaintiffs in this case have the same fatal flaw as Ms. Cavallaro: they have not demonstrated the required employer-employee relationship necessary to establish that their injuries are fairly traceable to the Corporate Defendants, nor that a favorable decision against the Corporate Defendants would redress Plaintiffs' alleged injuries. *Cavallaro,* 971 F.Supp.2d at 146, 2013 WL 360405, at *4 ("Inclusion of class allegations does not relieve a plaintiff of the requirement that she allege that she personally suffered an injury, fairly traceable to the challenged action of the defendants.") (citing *Warth v. Seldin,* 422 U.S. 490, 502, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).

*Roman*, 970 F. Supp. 2d at 415-16 (citations omitted). The Court agrees with the logic and holdings of *Roman* and *Cavallaro*. The four *Bonnette* factors, as used to determine whether multiple entities are a "joint employer" for FLSA liability purposes, establish the proper analysis to determine whether a plaintiff has standing to sue entities apart from his immediate employer. Issues of whether an "enterprise" exists in the FLSA context, on the other hand, are more relevant to the issue of *coverage* under the statute, not liability.[14]

---

[14]   While the FLSA does extend coverage to "enterprises," 29 U.S.C. §§ 203(r), (s), "the finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer-

Plaintiff here has not demonstrated the "required employer-employee relationship necessary to establish that [his] injuries are fairly traceable" to Destiny or Diamond, nor that a favorable decision against Destiny or Diamond would redress his alleged injuries. *Roman*, 970 F. Supp. 2d at 415-16. Therefore, Plaintiff's individual[15] claim against Destiny and Diamond in Count I will be dismissed, without prejudice, for lack of standing.[16]

---

employee relationship." *Cornell v. CF Center, LLC*, 410 Fed. Appx. 265, 267 (11th Cir. 2011) (quoting *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986)); *Chao v. A-One Medical Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003) (same).

The parties somewhat conflate FLSA coverage and FLSA liability in their papers. *See Richardson v. Help at Home, LLC*, No. 17-cv-60, 2017 WL 2080448, at *2 (N.D. Ill. May 15, 2017) (explaining the difference between "enterprise" as it relates to coverage and "joint employer" as it relates to liability); *see also Villareal*, 776 F. Supp. 2d at 793 ("Whether a group of companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers under 29 U.S.C. § 207 are technically separate issues.").

Congress broadened the scope of the FLSA in 1961 to add enterprise coverage, which focuses on the nature of the employer's business. 1 Rothstein et al., *Employment Law* § 4:2 (5th ed. 2014). Under the FLSA's enterprise coverage, as opposed to individual employee coverage, "all employees of a covered enterprise are automatically covered [under the FLSA] without regard to the duties of each individual worker." *Id.* Whether multiple entities constitute "joint employers" for FLSA liability purposes, on the other hand, revolves around allegations that "two or more entities or individuals are statutory employers of the same workers at the same time and therefore [are] jointly responsible for compliance with the FLSA." *Id.*

[15]   Although the Court has already addressed Plaintiff's § 216(b) Motion, it is important to note that Plaintiff would not have been able to use putative plaintiffs to bring in Destiny and Diamond under the prediction that a future collective of uncertain composition will include employees of these two entities. *Roman*, 970 F. Supp. 2d at 416 (citing *Lucas v. BMS Enters., Inc.*, No. 3:09-cv-2159-D, 2010 WL 2671305, at *3 (N.D. Tex. July 1, 2010) (In an FLSA case, plaintiffs "allege standing to sue the ... defendants on the basis that members of the putative class were employed by those defendants, and accordingly suffered the same injury as did plaintiffs. That basis is inadequate to allege standing."); *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) ("When the case is a class action lawsuit, the named class representatives 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'") (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1001 n. 13, 102 S .Ct. 2777, 73 L. Ed. 2d 534 (1982))).

[16] The Court need not address Defendants' MTD pertaining to Count I against Destiny and Diamond under Rule 12(b)(6) for failure to state a claim.  As already explained, that count is deficient as to Destiny and Diamond.  Even assuming *arguendo* that Plaintiff's proposed four-factor test from *Naperville Ready Mix* governs whether the three Defendants can be considered a "joint employer," Plaintiff offers no allegations in support thereof other than a bare recitation of those factors: "Defendants jointly operate a chain of McDonald's franchise stores and maintain interrelated operations, centralized control of labor relations, common management and common ownership and financial control." [DE 1 ¶ 11] Such

## CONCLUSION

### Plaintiff's Combined Motion for Conditional Collective Action Certification

For the reasons stated herein, Plaintiffs' § 216(b) Motion [DE 18] to conditionally certify Count I of Plaintiff's complaint is hereby **CONDITIONALLY GRANTED**, and the Court provisionally deems the FLSA claims in Count I a collective action. However, the Court limits this conditional certification to include only those employees who worked for one of the six McDonald's restaurants owned and operated by Defendant Glamma in Elkhart, Indiana. The Court thereby excludes from this conditional certification any employees who only worked at the four Glamma restaurants not located in Elkhart, the one restaurant owned and operated by Destiny, and the eight restaurants owned and operated by Diamond. The Court defines the conditionally approved collective class as follows:

> **Present and former hourly-paid workers at any McDonald's restaurant operated by Harry L. Smith d/b/a "My-Tre Glamma Management" and located in Elkhart, Indiana, at any time between [THREE YEARS PRIOR TO THE DATE OF MAILING] and the present.**

Plaintiff Jason Heuberger shall conditionally serve as the class representative of the conditionally certified collective class, and be represented by current counsel of record.

The Court hereby **DENIES** Plaintiff's § 216(b) Motion to conditionally certify Count III of Plaintiff's complaint as a collective action.

The Court hereby **DENIES** as moot Plaintiff's § 216(b) Motion to conditionally certify Counts II and IV.

---

allegations will not survive a motion to dismiss pursuant to Rule 12(b)(6). *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (On a motion to dismiss for failure to state a claim, a district court need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.); *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56.

**<u>Notice to Potential Plaintiffs</u>**

**The Court ORDERS the Defendant, Harry L. Smith d/b/a My-Tre Glamma Management, to provide Plaintiff's counsel with a list, in electronic format and within thirty (30) days of this Order, containing the names of all potential plaintiffs who have worked during the time frame specified immediately above.  The list shall include each individual's full name, home address, and dates of employment.  The information provided by Defendant is to be given to Plaintiff's counsel only, and may only be used as needed for this litigation.**

**The Court further ORDERS that: (1) the case caption be removed from the Notice and that the Notice instead be placed on Plaintiff's attorneys' letterhead; (2) the opt-in period shall run sixty (60) days from date on which the Notice is mailed; and (3) the parties shall confer and draft a Notice that complies with this Order and submit said draft to the Court for approval within thirty (30) days from the date of this Order. No Notice shall be issued prior to the Court's approval.** The Court also recommends that the parties confer and agree upon a closing date for the opt-in period once the Notice has been mailed.

The Court hereby **DENIES** Plaintiff's request that Defendant be compelled to post the Notice in the breakrooms of the relevant restaurants; and the Court hereby **DENIES** Plaintiff's request that Defendant provide him with the social security numbers of potential plaintiffs.

**<u>Defendants' Partial Motion to Dismiss</u>**

For the reasons stated herein, the Court **GRANTS** Defendants' Partial Motion to Dismiss Plaintiff's Complaint [DE 15] as to Plaintiff's remaining individual claims. It is hereby:

**ORDERED** that Counts II and IV be **DISMISSED** as moot, and with prejudice in their entirety and as to all Defendants; and it is further

32

**ORDERED** that Count III be **DISMISSED** with prejudice in its entirety and as to all

Defendants; and it is further

**ORDERED** that Count I be **DISMISSED** without prejudice as to Defendants Destiny

MGT, Inc., and Diamond Properties MGMT, Inc; and it is further

**ORDERED** that Plaintiff may file an amended complaint within **thirty (30) days** of this

Order.

SO ORDERED.

ENTERED:  September 7, 2017


_____/s/ JON E. DEGUILIO_____
Judge
United States District Court